# CLEMENT NATIONAL BANK, *v.* STATE OF VERMONT.

### ERROR TO THE SUPREME COURT OF THE STATE OF VERMONT.

No. 29.  Argued April 28, 29, 1913.—Decided November 10, 1913.

A tax upon deposits in a national bank to be paid by the depositors *held* in this case not to be a tax upon the franchise of the bank.

An interpretation by the state court of a state statute is controlling on this court; and this court determines whether the statute as so delimited conflicts with Federal law.

The National Bank Act does not withdraw credits of depositors in national banks from the taxing power of the State.

Under its broad powers of classification for taxation, a State may classify depositors in national banks so long as the tax is not essentially inimical to such banks in frustrating the purpose of the legislation or impairing their efficiency as Federal agencies.

The object of § 5219, Rev. Stat., is to prevent hostile discrimination against national banks; and a state tax to be in conflict therewith must constitute such a discrimination.

A provision in a statute permitting a bank to stipulate with the State to pay the taxes on deposits and thereby relieve its depositors from making returns does not place the bank under duress.

This court finds no basis for the charge of injurious discrimination against national banks in § 815 of Chapter 37 of the Public Statutes of Vermont.

While a national bank can only transact such business as the Federal statutes permit, it may, under its incidental powers, make reasonable business agreements in regard to its deposits including the payment

of state taxes thereon pursuant to the laws of the State in which it is located.  Such an agreement is not *ultra vires.*

A State may provide for garnishment or trustee process to collect a valid tax and may constitute a bank its agent to collect the tax from its depositors.

A state tax on interest-bearing deposits in national banks does not deny equal protection of the law on account of exemptions which it is within the power of the State to allow or on account of the exemption of non-interest-bearing accounts.  The classification is reasonable.

A state tax of a specified per cent. on deposits in national banks paid by the bank under agreement with the State pursuant to statute and which is otherwise valid, does not amount to denial of due process of law because the depositor had no notice in advance of the assessment, where, as in this case, the tax was recoverable by suit in which the depositor would have full opportunity to resist any illegal demand.

A lawful state tax on deposits in bank is imposed in the exercise of a power subject to which deposits are made, and does not impair the contract obligation of the bank to the depositors by requiring the bank to act as agent in collecting it.  *North Missouri R. R. Co.* v. *Maguire,* 20 Wall. 46.

84 Vermont, 167, affirmed.

THE facts, which involve the legality of a statute of Vermont imposing a tax on deposits in national banks, are stated in the opinion.

*Mr. Marvelle C. Webber* and *Mr. Maxwell Evarts* for plaintiff in error:

The Vermont statute constitutes an unlawful interference with national banks as Federal instrumentalities.

The tax the bank is required to pay is in effect and reality and by design a tax upon its franchises as a national bank, being based upon the average of deposits of the class created.

The title of the statute, while not absolutely controlling, indicates the purpose to tax the bank.  Gray on Taxing Power, p. 42, § 55, n. 49; *Holy Trinity Church* v. *United States,* 143 U. S. 457; *United States* v. *Fisher,* 2 Cr. 358,

386; *United States* v. *Palmer*, 3 Wheat. 610, 631; Machen, Federal Corp. Tax Law of 1909, p. 5 of introduction, n. 1.

The deposits become the property of the bank, not of the depositor, while the depositor becomes a creditor of the bank to the amount of the deposit. *Bank* v. *Millard*, 10 Wall. 152; *Scammon* v. *Kimball*, 92 U. S. 362, 369; 1 Morse on Banking, § 289; *State* v. *Franklin Co. Sav. Bank*, 74 Vermont, 246; *Manhattan Co.* v. *Blake*, 148 U. S. 412, 424.

They are assessable to the depositor only and as debts owing by the bank. *People* v. *Nat'l Bank &c.*, 123 California, 53; *County of Yuba* v. *Adams*, 7 California, 35.

The phraseology of the statute discloses the real purpose to tax the bank itself.

The stipulation and the return formulated by the state officials show that in actual operation of the statute it was construed as a tax on the bank itself.

The statute, being an attempt to tax national banks, is absolutely void. *Davis* v. *Elmira Savings Bank*, 161 U. S. 275, 283; *Bank* v. *New York*, 121 U. S. 138; *Bank* v. *Dearing*, 91 U. S. 29; *McCullough* v. *Maryland*, 4 Wheat. 316; *Osborn* v. *Bank*, 9 Wheat. 738; *Howley* v. *Hurd*, 72 Vermont, 122; *Owensboro Bk.* v. *Owensboro*, 173 U. S. 664.

The sum the bank is called upon to pay is based on the average of the deposits for the period. This measures the amount to be paid by the bank. Such taxes are privilege or franchise taxes on the privilege of doing business, Gray on Taxing Power, pp. 43–44, § 56; *Socy. for Sav.* v. *Coite*, 6 Wall. 594; *Provid. Inst.* v. *Massachusetts*, 6 Wall. 611; *Commonwealth* v. *People's Bank*, 5 Allen, 428; *State* v. *Bradford Sav. Bank*, 71 Vermont, 234, 238; *Commonwealth* v. *Lancaster Sav. Bank*, 123 Massachusetts, 493; *Jones* v. *Winthrop Sav. Bank*, 66 Maine, 242.

The Supreme Court of the State of Vermont has held

that a tax based upon the average amount of deposits in savings banks is a franchise tax. *State* v. *Bradford Bank,* 71 Vermont, 234; *State* v. *Franklin Bank,* 74 Vermont, 246. See also *New Orleans* v. *Houston,* 119 U. S. 265.

The facts show that the tax is on the business of the bank. It is also on the bank itself because it cannot recoup the amount paid from the depositor. Gray on Taxing Power, § 801a; Cooley on Taxation, 3d ed., vol. 1, p. 717, n. 1; *Farmers Bank* v. *Hoffman,* 93 Iowa, 119; *New Orleans* v. *Houston,* 119 U. S. 265; *Boston* v. *Beal,* 51 Fed. Rep. 306; *Stapylton* v. *Thaggard,* 91 Fed. Rep. 93; *Aberdeen Bank* v. *Chehalis County,* 166 U. S. 440.

The statute by design and in effect is a duress, as it compels the banks to execute the stipulation or to lose their depositors. 15 Cyc. 249. There is really no choice. *Swift* v. *United States,* 111 U. S. 22; *Maxwell* v. *Griswold,* 10 How. 241; *Robertson* v. *Frank Brothers,* 132 U. S. 17; *Atchison, Topeka &c. Ry. Co.* v. *O'Connor,* 223 U. S. 280; *Gaar, Scott & Co.* v. *Shannon,* 223 U. S. 468, 471.

The statute interferes with existing contracts between the bank and its depositors and impairs their obligation.

The act of the bank is *ultra vires* and not enforceable. *McCormick* v. *Bank,* 165 U. S. 538, quoted in *Bowen* v. *Needles National Bank,* 94 Fed. Rep. 925, 930; *Metropolitan Stock Exchange* v. *National Bank,* 76 Vermont, 303; *First National Bank* v. *National Exchange Bank,* 92 U. S. 122; *Concord First National Bank* v. *Hawkins,* 174 U. S. 364; *Central Transportation Co.* v. *Pullman Car Co.,* 139 U. S. 24; 6 Century Digest, col. 1655–1662; 21 Am. & Eng. Ency. (2d ed.) 376 (9) and cases cited; *Commercial National Bank* v. *Pirie,* 82 Fed. Rep. 799, 801–802; *Norton* v. *Bank,* 61 N. H. 589.

As to the effect of stipulations somewhat analogous to the one in question, see *Home Ins. Co.* v. *Morse,* 20 Wall. 445; *Baron* v. *Burnside,* 121 U. S. 186.

To enforce a stipulation on the part of the defendant

agreeing to pay such tax, would clearly cast upon it additional burden, and which was not contemplated in, and is not authorized by the statutes to which it owes its existence. *First National Bank* v. *Converse*, 200 U. S. 425; *Merchants National Bank* v. *Wehrman*, 202 U. S. 295; *Dolley* v. *Abilene Nat. Bank*, 179 Fed. Rep. 461.

The stipulation in the case at bar subjects a national bank to the supervision of another sovereignty; and this the bank cannot voluntarily or involuntarily submit to.

There was no valid consideration and, as the tax is one upon the depositors, it violates the Fourteenth Amendment by denying the equal protection of the laws in selecting depositors in national banks and making an arbitrary classification of them.

It exempts from that class certain specified corporations, and thereby in some of these exemptions discriminates among the depositors constituting the class.

It discriminates between depositors in national banks and depositors in state banks and trust companies.

It discriminates between depositors in national banks and individuals generally. *Kentucky Railroad Tax Cases*, 115 U. S. 321, 337; *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232, 237; *Nicol* v. *Ames*, 173 U. S. 509, 521; *Magoun* v. *Illinois Trust Co.*, 170 U. S. 283, 293; *Keeney* v. *New York*, 222 U. S. 525; *Mutual Loan Co.* v. *Martell*, 222 U. S. 225, 235.

Such a selection is an arbitrary classification. *Gulf, Colo. &c. Ry.* v. *Ellis*, 165 U. S. 150, 165; *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232, 237; *State* v. *Hoyt*, 71 Vermont, 59.

The act discriminates among the depositors constituting the class by the exceptions made in § 819. Certain depositors would be left to taxation at the place of their residence at a higher rate. *Magoun* v. *Illinois &c. Bank*, 170 U. S. 283; *State* v. *Hoyt*, 71 Vermont, 59; *Aluminum Co.* v. *Ramsey*, 222 U. S. 251.

The statute discriminates against national banks by requiring the disclosure of names of banks holding this class of deposits.

The statute discriminates against the general taxpayer.

The act violates the Fourteenth Amendment, as the taxes so levied would take the property of the depositors without due process of law. There was no valid assessment, and none provided for.

The tax is assessed, if assessed at all, without proper notice to the depositors. 27 Am. & Eng. Ency. (2d ed.) 660, 663; Cooley's Const. Limit. 259; *Commonwealth v. Del. D. C. Co.,* 123 Pa. St. 594, 600; *Commonwealth v. Lehigh V. R. Co.,* 104 Pa. St. 89, 91, 101; *Jones v. Winthrop Savings Bank,* 66 Maine, 242, 245; *State v. Bradford Savings Bank,* 71 Vermont, 234, 238; 1 Cooley on Taxation, 600, 753; *People v. Hastings,* 29 California, 449.

*Dollar Savings Bank v. United States,* 19 Wall. 227; *King v. United States,* 99 U. S. 229; *United States v. Erie Ry. Co.,* 107 U. S. 1, and *United States v. Phil. & Read. R. R. Co.,* 123 U. S. 113, holding that there are some classes of property as to which a legislative assessment is sufficient without a special valuation, do not apply to this case.

There is no proper notice to the depositors. In *Turpin v. Lemon,* 187 U. S. 51, 57; *McMillen v. Anderson,* 95 U. S. 37; *State Railroad Tax Cases,* 92 U. S. 575, 610; *Kentucky Railroad Tax Cases,* 115 U. S. 321; *Davidson v. New Orleans,* 96 U. S. 97, 104, there was a hearing; in this case there is none.

There is no independent scheme of taxation, such as is required to preserve constitutional rights. A special tax law must make such provision for an independent scheme. *Commonwealth v. Lehigh Valley R. R. Co.,* 104 Pa. St. 89, 101. *Winona &c. Co. v. Minnesota,* 159 U. S. 526; *Hagar v. Reclamation District,* 111 U. S. 701, distinguished.

*Mr. Clarke C. Fitts* and *Mr. Hale K. Darling* for defendant in error.

MR. JUSTICE HUGHES delivered the opinion of the court.

The judgment under review awarded a recovery in favor of the State of Vermont against the plaintiff in error, The Clement National Bank, upon an agreement which the bank had made pursuant to § 815 of Chapter 37 of the Public Statutes of Vermont entitled "Taxation of National Bank Deposits," originally enacted as No. 41 of the Acts of 1906. The chapter is set forth in the margin.[1] The Federal questions relate to the validity of the

---

[1] CHAPTER 37.

TAXATION OF NATIONAL BANK DEPOSITS.

SEC. 804. *Depositor's report to commissioner.* Every person having, on the first day of April and October, an interest bearing deposit in a national bank in this state, shall, except as otherwise provided by this chapter, within twenty days thereafter, report the amount thereof and the name of such bank to the commissioner of state taxes, on blanks prepared and furnished by him to such depositor on application therefor.

SEC. 805. *Depositor's report to listers.* Every resident of this state so having an interest bearing deposit in a national bank in this state shall annually, except as otherwise provided in this chapter, report to the listers of the town wherein he resides, the names of all banks located in this state wherein he then has or has had any such deposits during the year next preceding the first day of April in the year wherein such report is made, and the amount of such deposits.

SEC. 806. *Interrogatories in inventories.* The secretary of state shall incorporate into the tax inventory interrogatories so framed as to require the person subscribing to the same to state in writing and under oath whether or not he then has or has had during the year next preceding the first day of such April, any such deposits; and, if such interrogatories are answered in the affirmative, he shall also state the name of such bank and the amount of such deposit with all accrued interest.

SEC. 807. *Reports by listers.* The listers in every town shall, on or

bank's stipulation in view of the scheme of taxation which induced the making of it.

The plaintiff in error was organized under the Federal

---

before the tenth day of May, upon blanks to be furnished by the commissioner of state taxes, report the names of all persons whose inventories show that they had in a national bank in this state on the first day of the preceding April, deposits of the character and kind described in the third preceding section, together with the amount of each individual deposit so held on such first day of April and the name of the bank holding such deposit.

SEC. 808. *Reports filed; inspection.* Such reports shall be kept on file by said commissioner for three years from and after the dates on which the taxes based thereon became due and payable to the state. Such reports shall not be subject to the inspection of any person other than said commissioner and the employés in his office, the attorney general, and the state's attorney of the county wherein such bank has its principal place of business or said depositor, if a resident of this state, has his domicile. Any information contained in such reports shall not be disclosed by any person authorized to examine the same, except by the direction of a court of competent jurisdiction.

SEC. 809. *Assessment of tax; payment.* Every person so having a deposit in a national bank as aforesaid shall semi-annually, except as otherwise provided by this chapter, pay a tax to the state, which is hereby assessed at the rate of seven-twentieths of one per cent semi-annually upon the amount of such deposit so held by such national bank on the first day of April and October; and no deduction therefrom shall be made on account of any exemption. The taxes imposed by this section shall be paid to the state treasurer semi-annually on or before the last day of May and November next following the dates whereon the reports provided for in the fourth preceding section are required to be made.

SEC. 810. *Exempt from other taxes.* No other tax shall be assessed on such deposits in national banks, nor against the depositors on account thereof.

SEC. 811. *Penalty.* A depositor who wilfully fails to make returns or pay the taxes provided by this chapter shall forfeit ten per cent of such deposit to the use of the state for each month's delay in filing such return. Such tax and forfeiture may be recovered in an action on this statute commenced by the commissioner of state taxes in the name of the state, in any county, municipal or city court.

SEC. 812. *Trustee process.* A person having any of the moneys,

statutes and does business at Rutland, Vermont. For several years it has maintained a "savings department," allowing depositors therein interest at a rate exceeding

goods, chattels, effects, rights or credits of said depositor in his possession may be summoned as trustee in any action instituted under the preceding section, notwithstanding that the amount of such tax or the amount in his hands may be less than ten dollars.

SEC. 813. *Waiver of penalty.* If the commissioner of state taxes or the court wherein such action is pending for the recovery of such tax or forfeiture becomes satisfied that such failure was not wilful on the part of the depositor, said commissioner or said court may, in its discretion, waive any part or all of such penalty.

SEC. 814. *Bank may elect to pay.* If a national bank in this state so elects it may pay to the state all taxes provided by this chapter; and it shall be lawful for such bank to deduct such taxes so paid from the interest or deposits then or thereafter held by it belonging to the person from whom such tax became due.

SEC. 815. *Same, stipulation.* If a national bank elects to so pay such taxes to the state and to make returns as hereinafter provided, it shall semi-annually, on or before the first day of April and October, file with the commissioner of state taxes a stipulation setting forth such fact; and thereupon such bank shall become liable to the state for such tax for the six months named in such stipulation and to make returns as hereinafter provided; and no depositor in such bank shall be required to make the returns hereinbefore specified covering the six months' period for which such stipulation was filed.

SEC. 816. *Commissioner's certificate to bank.* Upon such stipulation being filed, said commissioner shall issue in duplicate to such bank a certificate showing that it has filed such stipulation.

SEC. 817. *Bank's liability.* Every bank filing such stipulation shall thereupon become liable to the state for the amount of such tax of seven-twentieths of one per cent of the average amount of such deposits held by such bank during the six months beginning with the first day of April and October respectively, for which such stipulation was filed.

SEC. 818. *Bank's return.* If such bank, on or before the first day of April, files a stipulation as hereinbefore provided, it shall, on or before the thirty-first day of the following October, file a return with the state treasurer and commissioner of state taxes, verified by the oath of its president, cashier, or one of its directors, showing the average amount of such deposits for the six months ending the thirtieth day of Septem-

two per cent. per annum, payable on the first days of January and July in each year on deposits remaining in bank on those days.   Certain other depositors have received certificates of deposit with interest at the rate of three per cent. per annum for each calendar month that the deposit continued.  Prior to the year 1906, depositors in national banks in Vermont, whether or not their deposits bore interest, were taxable at the local tax rate, in the districts in which they resided, in common with other owners of credits (or debts due from solvent debtors) under the general plan of local taxation.   Pub. Stat. (Vt.) 1894 ed., §§ 374, 398–399.   Depositors in savings banks and trust companies, organized under the laws of the State, had long been exempt from all taxation upon their deposits to a specified extent (at first $1,500, and later $2,000 in any one institution), these organizations being subject to a state tax of seven-tenths of one per

---

ber in that year, and shall pay to the state treasurer the amount of such semi-annual tax.   In case such bank, on or before the first day of October, files a like stipulation, it shall, on or before the thirtieth day of the following April, file a like return with the first named officers, showing the average amount of such deposits for the six months ending with the thirty-first day of March next preceding the making of such return, and shall, in like manner, pay such taxes.

SEC. 819. *Exemptions.*   The provisions of this chapter shall not apply to municipalities; nor to corporations organized solely for charitable, educational or religious purposes; nor to railroad, insurance, guaranty, express, telegraph, telephone, steamboat, car, transportation, sleeping car, parlor car, mortgage, loan or investment companies; nor to savings banks, trust companies, and savings banks and trust companies which have interest bearing deposits in national banks; nor to national banks having an interest bearing deposit in another national bank; nor to any person having any sum of money on deposit in a national bank whereon interest not exceeding the rate of two per cent per annum is paid or allowed him by such national bank.

SEC. 820. *Exemptions restricted.*   Nothing in this chapter shall be construed as exempting from taxation any deposit in any national bank, except as hereinbefore provided.

cent. per annum computed upon the average amount of deposits; in this computation, deposits in excess of the above-stated limit were deducted and upon these the depositors were taxable locally. Pub. Stat. (Vt.) 1894 ed., §§ 582–584; Acts of 1902, No. 20, § 41; Acts of 1906, No. 28, § 1; Pub. Stat. 1906 ed., §§ 744–746.

This system being continued as to the state institutions and the depositors therein, the General Assembly passed the statute in question which provides for a state tax on interest-bearing deposits in national banks (where the interest exceeds two per cent. per annum) of seven-twentieths of one per cent. semi-annually. Persons having deposits of this sort, unless specially excepted (§ 819), are required to report them at specified periods (§§ 804–806), and to pay the tax without deduction on account of any exemption (§ 809). No other tax is to "be assessed on such deposits in national banks, nor against the depositors on account thereof" (§ 810).

It is further provided that, if a national bank so elects, it may pay to the State all the prescribed taxes and deduct them from the interest or deposits of the persons from whom they became due (§ 814). On such election, the bank is, semi-annually, to file with the state commissioner a stipulation to that effect; no depositor is required to make returns for the period covered by the stipulation (§ 815); the state commissioner is to issue to the bank a certificate showing that it has been filed (§ 816); and the statute provides that upon such filing the bank shall "become liable to the State for the amount of such tax of seven-twentieths of one per cent. of the average amount of such deposits" held by the bank during the six months to which the stipulation refers (§ 817).

This suit was brought by the State upon the following stipulation which was filed by the plaintiff in error, on October 1, 1908, the returns and payment therein specified not having been made:

"STATE OF VERMONT:

"The Clement National Bank, whose banking house is located at Rutland, in the State of Vermont for the consideration hereinafter named, hereby stipulates and agrees with the State of Vermont that on or before the thirtieth day of April 1909, it will make sworn returns to the State Treasurer and Commissioner of State Taxes showing the average amount of all deposits held by it during the six months beginning with the first day of October 1908, whereon the rate of interest paid or allowed by said bank to the depositors thereof exceeds two per cent per annum; and that on or before the thirtieth day of April 1909, it will pay to the State Treasurer a tax of seven-twentieths of one per cent of the average amount of all such deposits so held by it.

"This stipulation is made and is to be filed with said Commissioner in consideration and for the purpose of carrying out the provisions of the statutes of Vermont which provides that upon the making and filing hereof as aforesaid no depositor having an interest bearing deposit or deposits in said bank whereon the rate of interest paid or allowed by said bank exceeds two per cent per annum shall be required on or before the 20th day of October 1908, to make returns to the State Treasurer and Commissioner of State Taxes showing the amount of such deposit or deposits in said bank on the first day of October 1908; and that no such depositor shall be required to pay to the State Treasurer on or before the thirtieth day of November 1908 a tax of seven-twentieths of one per cent of the amount of such interest bearing deposit or deposits so held by said bank on the first day of October 1908.

"This stipulation is also made and is to be filed as aforesaid for the purpose of obtaining from said Commissioner as the law provides a certificate in duplicate setting forth that the same has been filed and of showing that said bank has elected to pay and will pay to the State Treasurer

on or before the thirtieth day of April 1909 a tax of seven-twentieths of one per cent of the average amount of all such deposits held by said bank during the six months beginning with the first day of October 1908 on account of which the depositors thereof shall be by said bank paid or allowed interest exceeding the rate of two per cent per annum.

"In witness whereof said bank has on this 30th day of September 1908 at Rutland, in the State of Vermont caused its corporate name to be hereunto affixed by its cashier duly empowered so to do by vote of said bank.

CLEMENT NATIONAL BANK,
Rutland, Vermont,
by C. H. HARRISON, *Cashier.*

"Endorsed: Received October 1, 1908, J. E. Cushman, Commissioner of State Taxes."

The case was tried upon an agreed statement of facts. It appeared that the state commissioner issued to the bank his certificate, which was conspicuously posted in its banking room, that the stipulation had been filed and that therefore depositors, having deposits upon which the rate of interest exceeded two per cent. per annum, would not be required to make returns. In consequence, none of the depositors' reports was made, and there was no valuation of the individual deposits by any official during the period covered by the stipulation.

It was also set forth that, under the bank's method of allowing interest on deposits, it was impossible for it to determine, at the time it was required to make its semi-annual returns under the stipulation, upon what deposits interest exceeding two per cent. per annum would actually be allowed. Thus, deposits might be withdrawn prior to January first or July first, the dates on which interest was credited on amounts then in bank. In practice, in former periods for which the plaintiff in error had made payments under similar stipulations, it had included all

deposits belonging to the class upon which interest was allowable in excess of two per cent. per annum, in arriving at the average amount of deposits, whether or not interest was in fact paid.  The monthly averages were ascertained by averaging the aggregate deposits held at the close of each day, and the average for the six months was taken by averaging the monthly averages.  Thus computed, the average amount of deposits of the class above-described (including those of non-residents) for the six months beginning October 1, 1908, was $594,357.74.  The average deposits exempted for the period in question, under § 819, were $15,688.15, and the net average for the six months was $578,669.19 upon which the State sought to recover $2,025.33.

The State also declared upon a similar stipulation filed by the bank on April 1, 1909, covering the ensuing six months.  The court of first instance rendered judgment in favor of the State for the full amount demanded.  This was reversed by the Supreme Court of the State which held that the statute did not apply to non-residents and that the amount of the recovery should be determined by a computation based on the credits of resident depositors.  Final judgment was then entered against the bank, covering the two periods, in the sum of $3,989.85.  *State* v. *Clement National Bank,* 84 Vermont, 167.

1. It is contended that the statute imposed a tax upon the franchises of national banks and hence exceeded the state power.  *Owensboro National Bank* v. *Owensboro,* 173 U. S. 664, 667, 668, and cases there cited.

But it is apparent that, whatever other objections may lie, the tax complained of is not laid upon the national bank itself, its property or franchises.  It is imposed upon the depositors; they alone are required to pay it.  If they fail to make returns, as provided by the statute, they are subject to penalty; and both tax and penalty are recoverable by suit against them in the name of the State.  If

they escape the tax, it is because of the bank's stipulation. If the bank becomes liable, it is by virtue of its agreement and not otherwise. The statute was so interpreted by the Supreme Court of the State which said: "The transaction which makes the money the property of the bank gives the depositor a credit of equal amount, and the term 'deposit' may be used to indicate the money deposited or the credit which the depositor receives for it. The last must be taken to be the meaning here, for the statute lays the tax upon 'the depositor in so many words." 84 Vermont, 167, 181. There is no difficulty in the interpretation of the statute as to the prescribed incidence of the tax and, aside from that, the decision of the state court is controlling as to the persons upon whom the statute fixed responsibility. It was the province of that court to determine what the terms of the statute authorized, commanded or forbade, and it is for this court to say whether in view of its operation, thus delimited, it conflicts with the Federal law. *People* v. *Weaver*, 100 U. S. 539, 541, 542; *First National Bank of Garnett* v. *Ayers*, 160 U. S. 660, 664; *Aberdeen Bank* v. *Chehalis County*, 166 U. S. 440, 444; *Commercial Bank* v. *Chambers*, 182 U. S. 556, 560.

2. It is not urged that the legislation of Congress relating to national banks, either expressly or by implication, withdraws from the reach of the taxing power of the State the credits belonging to depositors, whether or not interest-bearing. "No one contends," says the plaintiff in error, that a State "has not the right to include in its taxation of a person's property the amount which he may have on deposit in the savings department of a national bank." It must also be recognized that in exercising its authority to tax property within its jurisdiction, the State is not limited to one method. It has a broad range of discretion in classifying subjects of taxation and in employing different methods for different sorts of property.

*Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232, 237; *Home Insurance Co.* v. *New York*, 134 U. S. 594, 606; *Citizens' Telephone Co.* v. *Fuller*, 229 U. S. 322, 329–331. The objection made by the bank to the State's plan must rest not upon the mere fact that the depositors in national banks are taxed upon their credits or that they are taken out of the system of local taxation, but upon the ground that the measure adopted is essentially inimical to national banks, frustrating the purpose of the national legislation or impairing their efficiency as federal agencies. *Davis* v. *Elmira Savings Bank*, 161 U. S. 275, 283; *McClellan* v. *Chipman*, 164 U. S. 347, 357. And that, in substance, is the position taken.

To be open to such an objection, it must appear that the scheme of taxation constitutes an injurious discrimination. Even in the case of shares of the capital stock of national banks, which cannot be taxed save with the consent of Congress (*People* v. *Weaver*, 100 U. S. 539, 543), taxation by the State is expressly permitted if it is not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens. Rev. Stat., § 5219. The object is to prevent hostile discrimination and for this purpose a standard is fixed. *Mercantile Bank* v. *New York*, 121 U. S. 138, 154, 155. With respect to the taxation of depositors' credits, the Federal statute does not prescribe a rule; and, the property being normally subject to the State's taxing power, there is no warrant for implying a restriction which would extend beyond the requirements of protection from the prejudicial effect of such exactions as would be unjustly discriminatory.

It follows that the comparison must have regard to business and property which may be deemed to have, generally speaking, a similar character; and, in the present case, there is no basis for the contention that the statute unfairly discriminates against national banks unless it may be found in the method of dealing with deposits in

banking institutions organized under the state law. The institutions thus brought to our attention are savings banks and trust companies. Formerly there were also state banks of circulation, discount and deposit; but these, shortly after the passage of the National Banking Act, ceased to exist and were succeeded by trust companies or "savings banks and trust companies." The latter were organized under special charters and had, except as to the issuance of notes of circulation, very nearly the same powers as those possessed by the earlier state banks. *State v. Franklin County Savings Bank & Trust Co.*, 74 Vermont, 246, 257–258.

These state organizations, as it has already been observed, for many years had been subject to a special state tax upon the average amount of deposits, after certain deductions. This has been held to be a franchise tax (*State v. Bradford Savings Bank*, 71 Vermont, 234; *State v. Franklin County Savings Bank & Trust Co., supra*.) Having laid this tax, the State exempted the depositors in these savings banks and trust companies from taxation upon their respective credits not exceeding $2,000 in any one institution. Individual deposits over this amount, as we have seen, were to be deducted in computing the tax to be paid by the state banks and trust companies and were to be listed by the depositors for local taxation at their places of residence. The situation then was, with respect to the state institutions, that they paid the tax of seven-tenths of one per cent. per annum upon average deposits, and the depositors were exempted from taxation upon those deposits which entered into the calculation of this average. National banks did not pay, and could not be compelled to pay, a franchise tax, or other tax upon their deposits, and their depositors, having credits bearing interest at a rate exceeding two per cent. per annum, were required by the statute in question to pay upon such credits a tax of seven-twentieths of one per cent. semi-

annually.  Or, if any national bank desired to do so, it could agree to pay an amount computed at the same rate upon the average amount of deposits of the described class, and thus save its depositors both from the tax and the inconvenience of making returns.

With respect to those interest-bearing deposits of the described class which did not exceed severally the sum of $2,000, it is evident that there was no hostile discrimination against the national banks by reason of the rate of the tax imposed upon their depositors.  True, in the one case the depositor was exempted to the specified amount, and in the other the depositor was taxed.  But the depositor in the state bank was relieved because the bank paid.  The amount received by the State was substantially the same in each case, that is, at the rate of seven-tenths of one per cent. a year.  The state banks transacted their business under this charge.  As to national banks, the State could not follow the course taken with the state institutions and lay a tax upon the bank computed upon the amount of its deposits with a corresponding exemption to the depositors.  Nor was the State bound to extend its exemption to cases where the reason for it did not exist.  But the national bank, not being subject to the tax which the state banks had to pay, had the opportunity to give its depositors, if it chose, an equivalent benefit in interest rates.  So far as the amount of the tax upon these deposits was concerned, the national bank was not put at a disadvantage as compared with the state banks.

Then, as to deposits in excess of $2,000 for which depositors in the state institutions were taxable locally, it does not appear that the difference in method was to the prejudice of national banks.  The depositors in the latter, with respect to the interest-bearing deposits in question, had a low flat rate and were free from what the state court properly called "the greater burden and uncertain demands of local taxation."  The agreed statement of

facts sets forth that the average local rate throughout the State for the year beginning April 1, 1908, was $16.70 per $1,000 of taxable property set in the grand list; the minimum being $7.50 per $1,000, and the maximum being $39.80 per $1,000. While deduction for debts was allowed in the ascertainment of the amount of personal estate subject to the local tax, and this was laid only once a year, the allowance of a much lower rate on deposits to any amount in a national bank might well be regarded as a compensatory, if not a greater, advantage in its general operation. It is said that no such publicity was required of the other taxpayers regarding their personal property as was demanded of depositors in national banks. This argument refers to the requirement that the latter should report the amount of their deposits and the names of the banks in which they were kept. But, in the case of local taxes, a "full statement of all taxable property" was required from each taxpayer, who was obliged to make oath that his inventory was "a full, true and correct list and description." Pub. Stat. (Vt.) 1906, §§ 536–540. What difference there may be in the form of the two statements is plainly not important. The requirements in the case of the depositors in national banks went no further than to secure the payment of the tax, and the returns were subject to official inspection only. Pub. Stat. (Vt.) 1906, § 808, quoted *ante*, p. 127.

It was in these circumstances that the legislature adopted the provision that, if the national bank agreed to pay an amount which might fairly be regarded as equivalent to the sum demanded of the depositors, the latter should be free from the necessity of making any returns. In no proper sense, could this be deemed to place the bank under duress. It may well be that the State desired by substituting the flat exclusive rate in place of local taxation to facilitate the appearance in larger amount of a class of property which easily escapes

taxation.  84 Vermont, 167, 195.  But the exaction it imposed upon the depositors was not relatively unfair, and in providing that the bank might, if it saw fit, make the returns and payment stipulated, the State left no possible ground for objection on the score of inconvenience in practical administration.  That the plaintiff in error, in the conduct of its savings department, did not fail to perceive the business advantages of the State's plan is apparent from the excerpts from the advertisements it published during the period covered by the stipulation in suit and prior thereto.  The following are illustrative:

"We pay 4 per cent. on savings accounts, in any amount from one dollar upwards.  All taxes are paid by the bank, and you do not need to report deposits in this bank to the listers."

"Be sure and take advantage of the law governing taxes on deposits in National banks.  Our depositors do not make any report of their deposits to the listers."

"Under the law governing savings deposits in National banks, we pay all taxes on any amount.  There is no $2,000 limit.  You can carry any amount tax free, and no report of your deposit is made by the bank to the listers."

We find no basis for the charge of injurious discrimination.

3. With this view of the scheme of the statute, we come to the question of the validity of the stipulation in suit.  The bank contends that it was *ultra vires*.  There is no suggestion that the bank did not have the power to allow interest upon deposits, or to conduct its savings department.  Neither party questions the bank's authority in that respect.  The practice of maintaining savings departments seems to have become extensive in recent years, without challenge by the Government.  (Report of the Comptroller of the Currency; Treasury Reports, 1912, p. 361.)  The position of the plaintiff in error is that, as-

suming its right to transact business of this sort, still it could not lawfully enter into the agreement which the State seeks to enforce.

The applicable principles are not in dispute. The Federal statutes relative to national banks constitute the measure of the authority of such corporations, and they cannot rightfully exercise any powers except those expressly granted or which are incidental to carrying on the business for which they are established. *California Bank* v. *Kennedy*, 167 U. S. 362, 366; *Logan County Bank* v. *Townsend*, 139 U. S. 67, 73. These incidental powers are such "as are required to meet all the legitimate demands of the authorized business, and to enable a bank to conduct its affairs, within the general scope of its charter, safely and prudently." *First National Bank* v. *National Exchange Bank*, 92 U. S. 122, 127; *Western National Bank* v. *Armstrong*, 152 U. S. 346, 351. The bank was authorized to receive deposits. Arising from these deposits were credits to the depositors, forming part of their property and subject to the taxing power of the State. It cannot be doubted that the property being taxable, the State could provide, in order to secure the collection of a valid tax upon such credits, for garnishment or trustee process against the bank or in effect constitute the bank its agent to collect the tax from the individual depositors. *National Bank* v. *Commonwealth*, 9 Wall. 353, 361–363; *Merchants Bank* v. *Pennsylvania*, 167 U. S. 461, 465, 466. Further, it would seem to be highly appropriate that, the credits of depositors being taxable by the State, the bank should be free to make reasonable agreements, and thus promote the convenience of its business, with respect to the making of returns and the payment of such amounts as the State might lawfully require of its depositors. Provision for such agreements, instead of constituting an interference with a Federal instrumentality would aid it in performing its functions

and would remove unnecessary obstacles to the successful prosecution of its business.

The contention, however, is that in this case the bank, under the statute, stipulated to pay at the specified rate upon an average amount of deposits and it is insisted that this amount did not correspond precisely to the amounts upon which interest was actually paid to the depositors and upon which accordingly they would have been taxable. That is, as already stated, certain deposits being withdrawn between the interest dates fixed by the bank, there would be deposits belonging to the interest-bearing class upon which interest would not in fact be paid. The facts in regard to the fluctuations in deposits during the period in question are shown in the excerpts from the agreed statement set forth in the margin.[1] But we are of the

---

[1] "Deposits to the amount of $4,514, were made subsequent to July 1, 1908, and were withdrawn prior to January 1, 1909; and deposits to the amount of $3,002.12 were made subsequent to January 1, 1909, and withdrawn, prior to July 1, 1909, some being withdrawn prior to April 1, and some subsequent thereto. No interest was paid by the defendant on any of the deposits mentioned in this article.

"Deposits to the amount of $7,069.24 were made after October 1, 1908, and were withdrawn prior to April 1, 1901, of which $5,723.29 were in the bank January 1, 1909, and drew interest at the aforesaid rate; deposits in said bank on October 1, 1908, to the amount of $20,726.28 whereon interest at said rate was then allowed by the defendant, were withdrawn prior to March 31, 1909. Eleven of the individual depositors having interest bearing deposits, not exceeding in the aggregate $4,561.95 became such after October 1, 1908, and ceased to be depositors before March 31, 1909; and forty-eight depositors of this class having deposits on October 1, 1908, not exceeding in the aggregate $22,530.54 ceased to be depositors before March 31, 1909."

It also appeared that the aggregate of such interest-bearing deposits on October 1, 1908, was $569,393.75 of which $36,424.27 were deposited by non-residents; and on April 1, 1909, such aggregate was $623,242.75 of which $39,361.98 were deposited by non-residents. The aggregate on the last-named date was $28,885.01 in excess of the average for the semi-annual period ending March 31, 1909. (Rec. pp. 16, 17.)

opinion that this lack of an exact correspondence between the amount upon which the depositors would have been taxed and the average amount upon which the bank agreed to pay cannot be said to furnish a ground for holding the agreement to be invalid. There was, and in the ordinary course of business there naturally would be, a substantial equivalency. The arrangement to make the computation upon the average amount of deposits of the class was a simple and convenient method which could fairly be said to offset in its advantages such risks as might be incident to the fluctuations. It is further said that the agreement did not contemplate a charge against the depositors' accounts of the amount paid by the bank. The bank, however, was free to adjust its interest rates accordingly. We find no ground for sustaining the contention that the agreement was beyond the bank's power.

4. But it is also insisted that the agreement cannot be enforced for the reason that it was without valid consideration. The proposition is that the tax considered as one upon the depositors would, if enforced, constitute a denial of the equal protection of the laws, and would take the property of the depositors without due process of law.

What has already been said with respect to the charge of discrimination as against the bank is applicable here and need not be repeated. Reference is also made to the exemptions granted by § 819 of the statute (*ante*) which makes its provision for the tax inapplicable to municipalities; to corporations organized solely for charitable, educational or religious purposes; and to various corporations which were otherwise taxed. All these exemptions it was manifestly within the power of the State to allow. Similarly, with respect to persons whose deposits did not bear interest exceeding two per cent. per annum, the legislature took this method of recognizing a practical difference between deposit accounts of the ordinary commercial sort and those which partook, generally speaking,

of the character of savings accounts. It cannot be said that the classification adopted was purely arbitrary or beyond the power of the State. *Citizens' Telephone Co.* v. *Fuller*, 229 U. S. 322.

In support of the contention that the tax would deprive the depositors of their property without due process of law it is said (1), that there was no valid assessment, and none was provided for and (2), that the tax was assessed, if at all, without proper notice to the depositors. The statute laid the tax at a specified rate upon bank credits; no other assessment than that made by the statute itself was necessary; and no other notice to the depositor than that thus given by law was required. The tax was recoverable by suit in which the depositor would have full opportunity to resist any illegal demand. *Dollar Savings Bank* v. *United States*, 19 Wall. 227, 240; *King* v. *United States*, 99 U. S. 229, 233; *United States* v. *Erie Railway Co.*, 107 U. S. 1, 2; *United States* v. *Chamberlin*, 219 U. S. 250, 263, 264.

5. Further objection is made that the statute interfered with existing contracts between the bank and its depositors, impairing their obligation. But this is clearly untenable. The statute did not act upon such contracts; it imposed a tax upon the property of depositors in the exercise of a power subject to which the deposits were made. *North Missouri R. R. Co.* v. *Maguire*, 20 Wall. 46, 61.

The judgment is affirmed.

*Affirmed.*