NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, a corporation, W. J. Small, and William I. Cohen, on behalf of themselves and all other holders of Round Hill General Improvement District Bonds, Plaintiffs,

v.

James J. JORDAN, Joe L. Bensinger, James Henry, Thomas Stewart, John Wynn, Kenneth Kjer, Jean Stoess, Thomas Cooke, Huey Johnson, Kenneth Woodward, Norman Hall and John Meder, all of the foregoing being members of the Governing Body of the Tahoe Regional Planning Agency, Round Hill General Improvement District, and B–Neva, Inc., Defendants.

Civ. No. 77–174 BRT.

United States District Court,
D. Nevada.

March 20, 1978.

William H. McNeil, Reno, Nev., Harold E. Rogers, Jr. & Associates, Harold E. Rogers, Jr., San Francisco, Cal., for plaintiffs.

Breen, Young, Whitehead, Terzich & Belding, C. Clifton Young, Reno, Nev., for B–Neva.

Eck, Harkins & Beckett, Ltd., F. Thomas Eck, III, Carson City, Nev., Sanford, San-

ford & Mousel, Charles M. McGee, Reno, Nev., for Round Hill General Improvement District.

Owen & Rollston, Gary A. Owen, South Lake Tahoe, Cal., for Tahoe Regional Planning Agency.

## ORDER

BRUCE R. THOMPSON, District Judge.

On October 28, 1977, defendant Tahoe Regional Planning Agency (hereinafter TRPA) filed a motion to dismiss the complaint in the above-entitled action pursuant to Rule 12(b)(6), F.R.C.P., for failure to state a claim upon which relief can be granted. In the interim, the Court of Appeals for the Ninth Circuit pronounced its opinion in *Jacobson v. Tahoe Regional Planning Agency,* 558 F.2d 928 (9th Cir. 1977) which held that the TRPA was immune from suit under the Eleventh Amendment to the United States Constitution. The court in *Jacobson,* however, did not foreclose the possibility of maintaining the action for prospective equitable relief against the individual members of the TRPA's governing board and its executive director. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). On January 27, 1978, this court dismissed the complaint as against the TRPA and granted plaintiffs leave to file an amended complaint within 20 days. The amended complaint was filed on February 3, 1978, and the parties have stipulated that the motion to dismiss and all supporting points and authorities relating thereto, and all points and authorities in opposition to defendants' motion to dismiss previously filed in this action, be applicable to the amended complaint.

The present action represents still another challenge to the constitutionality of the TRPA, and more specifically, the Land Use Ordinance (hereinafter LUO) which delineates the permitted uses of certain lands within the Lake Tahoe Basin. Here, plaintiffs maintain that the LUO constitutes an impairment of the obligation of contract in

contravention of Article 1, § 10, Clause 1, of the United States Constitution. This novel argument is predicated upon the recent decision in *United States Trust Company v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), whereby the Supreme Court gave new life to the previously impotent contract clause.

The pertinent facts have been set forth in plaintiffs' first amended complaint. The Round Hill General Improvement District is a municipal corporation located within Douglas County, Nevada, which encompasses approximately 643 acres lying adjacent to U.S. Highway 50, near Zephyr Cove, Nevada, on the south shore of Lake Tahoe. The district was formed on May 22, 1964, pursuant to Chapter 318 of the Nevada Revised Statutes (N.R.S. §§ 318.010 *et seq.*), for the purpose of providing streets, water, sewer, drainage and related facilities for a real estate development within the district, called Round Hill.

Acting pursuant to its statutory authority, the district, on July 1, 1964, issued assessment bonds, having par value of $450,-000, for the purpose of acquiring water, sewer and drainage facilities previously constructed for a shopping center located within the Round Hill District. On April 30, 1965, the district issued additional assessment bonds, having a par value of $1,992,000, for sewage facilities and transmission lines to export sewage to the Carson Valley. Additional assessment bonds, having a par value of $985,000 were issued on September 15, 1965, for the purpose of constructing streets, water, sewer and drainage facilities for residential lots within the Round Hill development.

All the bonds above-mentioned, including those of plaintiffs', are payable from assessments, secured by liens, against 443 acres of land located within the Round Hill District. In accordance with the provisions of N.R.S. § 318.370(2), the total assessments against the "Round Hill" acreage, at the time of the bond issuances, did not exceed 50 percent of the actual market value of such acreage.

In 1968, Nevada and California entered into a compact to create a regional agency with power to regulate and control development within the Lake Tahoe Basin. N.R.S. § 277.190 *et seq.,* Cal. Gov't. Code § 66800 *et seq.* In December 1969, Congress consented to the formation of the Tahoe Regional Planning Compact. Art. 1, § 10, Cl. 3, U.S. Const., Pub. Law 91–148, 83 Stat. 360 (1969).

The TRPA was formed pursuant to the Tahoe Regional Planning Compact, as the governing body charged with adopting ordinances, rules, regulations and policies to effectuate a regional plan setting minimum standards for water purity, zoning and shoreline development.

In the exercise of this power, the TRPA enacted, on February 10, 1972, a comprehensive land use ordinance which limited the permitted uses of certain lands within the Lake Tahoe Basin, including real property located within the Round Hill District which secures the payment of plaintiffs' assessment bonds.

Among the parcels of real property so affected by the LUO, was 243 acres of land within the Round Hill District which had been planned for future residential development by its owners. It cannot be gleaned from the record before the court whether the LUO has affected the remaining 200 acres of land which also secures plaintiffs' assessment bonds. Under the LUO, the 243 acres of land were rezoned as "General Forest District." Under this classification, uses of property are confined to recreation and the growing and harvesting of timber. Except for pre-existing lots, no residential use is permitted on the rezoned property.

Plaintiffs complain that as a result of the rezoning, the value of said acreage has been substantially lessened which has adversely affected the collectibility of the Round Hill assessment bonds. It is plaintiffs' contention that the LUO constitutes an unconstitutional retroactive impairment of the obligation of the plaintiffs' bonds inasmuch as it has had the effect of deterring payment of the assessments and reducing the value of the real property which secures the bond indebtedness.

Article 1, Section 10, of the United States Constitution provides particularly for the protection of citizens in respect to their constitutional rights by stating that no state shall pass any law impairing the obligation of contracts. By its very language, this provision is a limitation on the powers of the states only, *Thorpe v. Housing Authority,* 393 U.S. 268, 278, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), which initially poses the question of whether the LUO is a creature of state or federal law. We need not reach the merits of this issue inasmuch as the due process clause of the federal constitution provides essentially the same restraint against federal impairment of the obligation of contracts. See generally, Hale, the Supreme Court and the Contract Clause: III, 57 Harv.L.Rev. 852, 890 (1944); Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 U.S. 692, 695 (1960); *Lynch v. United States,* 292 U.S. 571, 579, 54 S.Ct. 840, 78 L.Ed. 1434 (1934); *Thorpe v. Housing Authority, supra.*

The obligation of a contract is defined as the law or duty which binds the parties to perform their agreements, *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 429, 54 S.Ct. 231, 78 L.Ed. 413 (1934), and a contract is impaired when a party is deprived of the benefit of his contract by a law. *Northern Pacific Ry. v. Minnesota ex rel. Duluth,* 208 U.S. 583, 591, 28 S.Ct. 341, 52 L.Ed. 630 (1908). Thus, the crux of plaintiffs' claim requires a determination whether the passage of the LUO had the effect of unconstitutionally impairing a contract.

In the present case, the existence of a series of valid contracts between Round Hill General Improvement District and plaintiffs is beyond cavil. Each assessment bond issued by Round Hill and purchased by plaintiffs formed a binding contract.

"[a bond is any] contractual device for present funding of tax revenues contemplated to be raised in the future, contrived to be issued as legal security to obligee by means of which obligee would acquire legal or equitable right to coerce by judicial processes repayment of a sum advanced on strength thereof, together with interest, is a 'bond' within constitutional prohibitions and limitations as to issuance of bonds by public authorities."

*City of Zephyrhills, Florida v. R. E. Crummer & Company,* 237 F.2d 338, 341 (5th Cir. 1956). Similarly, the applicable Nevada laws in existence at the time the Round Hill bonds were issued became a part of the contract, as if they had been expressly referred to or incorporated in its terms. *Home Bldg. & L. Assn. v. Blaisdell, supra,* 290 U.S. at 429–30, 54 S.Ct. 231.

The plaintiffs contend that the following provisions of the Nevada Revised Statutes have been particularly impaired by the enactment of the LUO. N.R.S. 318.370(2) imposes upon municipalities a statutory limitation on the amount of special assessments that can be levied upon individual lots and premises.

"In no case shall the amount of any one special assessment or the combined amounts of any series of special assessments upon any lot or premises for any one improvement or for more than one improvement exceed 50 percent of the actual market value of such lot or premises after such improvements have been made. Any cost exceeding the value of such lot or premises which would otherwise be chargeable upon such lot or premises shall be paid from the general funds of the district."

N.R.S. 318.450 sets forth the procedures for enforcement in event of default.

"1. When any special assessment is confirmed and payable, the board may direct the district secretary to report to the county treasurer a description of such lots and premises as are contained in the roll, with the amount of the assessment levied upon each and the name of the owner or occupant against whom the assessment was made, and to require the county treasurer to collect the several sums so assessed as a tax upon the several lots or premises to which they were assessed. Thereupon the amount so levied in the assessment roll shall be collect-

ed in the manner provided in the resolution confirming the assessments, and enforced, both before and after delinquency, by the county treasurer and other county officers, as provided by law, with the other taxes in the general assessment roll of the county, and in the same manner.

"Such amount shall continue to be a lien upon the premises assessed until paid, and when collected shall be credited to the proper funds.

"2. Nothing in this section shall be construed as preventing the district from collecting any special assessment by suit in the name of the board or other duly constituted governing body of the district; and the special assessment roll and the certified resolution confirming it shall be prima facie evidence of the regularity of the proceedings in making the assessment and of the right to recover judgment therefor."

The provisions setting forth the time and manner payment for the assessments is codified in N.R.S. 318.460(4), (5).

"4. The principal of the assessments shall be payable and be collected in semiannual or annual installments, as determined in the resolution providing for the issuance of the bonds, in annual amounts equal to the principal determined each year to accrue for such year on bonds then outstanding, as nearly as may be, and NRS 318.420 shall not apply.

"5. Interest on the unpaid assessments shall be at the rate stated in the bonds, and shall be payable and be collected in semiannual or annual amounts sufficient to pay the interest to accrue for such year on bonds then outstanding."

Finally, N.R.S. 318.470 provides for the creation and maintenance of a sinking fund.

"The special assessment, when levied, shall be and remain a lien on the respective lots and parcels of land assessed until paid, as provided in this chapter, and, when collected, shall be placed in a special fund and as such shall at all times constitute a sinking fund for and be deemed specially appropriated to the payment of the bonds and interest thereon, and shall not be used for any other purpose until the bonds and interest thereon are fully paid."

There can be no question that the LUO, which had the effect of diminishing the value of various acres of land which secured Round Hill's bond indebtedness, impaired the rights of plaintiff bondholders.

■ In order to have a constitutionally protected impairment, however, the challenged law must act on the contract itself as distinguished from the property which is the subject of the contract. See *Barwise v. Sheppard,* 299 U.S. 33, 40, 57 S.Ct. 70, 81 L.Ed. 23 (1936); *Clement Nat'l Bank v. Vermont,* 231 U.S. 120, 143, 34 S.Ct. 31, 58 L.Ed. 147 (1913), aff'g, *State v. Clement Nat'l Bank,* 84 Vt. 167, 78 A. 944 (1911); *North Missouri R. Co. v. Maguire,* 20 Wall. 46, 61, 22 L.Ed. 287 (1873); *Pier 67, Inc. v. King County,* 573 P.2d 2, 6–7 (Wash.1977); *Tower Plaza Investments, Limited v. DeWitt,* 109 Ariz. 248, 508 P.2d 324, 328–29 (1973). For this reason plaintiffs' reliance on the Supreme Court's recent decision in *United States Trust Co. v. New Jersey, supra,* is misplaced.

In *United States Trust,* the contractual obligation impaired was a 1962 statutory covenant between New York and New Jersey which limited the uses that could be made of certain revenues of the Port Authority of New York and New Jersey. The Port Authority, an agency financed primarily from private investment, was established by the two states in 1921 to coordinate the terminal, transportation and other facilities of commerce in, about, and through the port of New York. When the authority took over the Hudson and Manhattan Railroad, the 1962 covenant was adopted to promote continued investor confidence in the authority. It restricted the authority's use of its revenues and reserves, which were pledged as security for bonds issued by the authority. The covenant was repealed by the New Jersey legislature in 1974 in order to permit the authority to finance an expanded mass transit system. The court concluded that the repealing stat-

ute was an impairment of the state's contract and constituted a violation of the contracts clause in the absence of a showing that the impairment was both reasonable and necessary to serve an important purpose claimed by the state.

*United States Trust* involved a statutory repeal of a covenant which directly affected the conditions of the security for the investment. The present case does not involve a retroactive annulment, or even modification, of the statutory provisions alluded to by plaintiffs. Furthermore, the TRPA, which derives its power from the Compact, would be powerless to change Nevada law.

■ The contract rights and obligations in *United States Trust* were clear, unequivocal, concrete, and statutorily expressed. This cannot be claimed here. In the present case, the terms of the bond agreement are clear and remain unchallenged and unchanged. In comparison with the bond covenants in *United States Trust,* the Round Hill assessment bonds do not attempt to restrict the State of Nevada or the TRPA from promulgating and enforcing land use restrictions in the Lake Tahoe Basin. Nor would such a promise have been legally binding. *United States Trust Co. v. New Jersey, supra,* 431 U.S. at 23, 97 S.Ct. 1505. Although a state can commit itself with respect to future taxes or spending, the police power and power of eminent domain are generally considered inalienable. It is presumed that parties contract with knowledge that reservation of essential attributes of sovereign power is written into all contracts. *Veix v. Sixth Ward Ass'n,* 310 U.S. 32, 38–39, 60 S.Ct. 792, 84 L.Ed. 1061 (1940).

■ Plaintiffs' argument that a contract clause violation has occurred because the LUO has indirectly affected the value of their bonds, although ingenious, does not pose a case of first impression. In *South Terminal Corp. v. Environmental Protection Agency,* 504 F.2d 646, 679–80 (1st Cir. 1974), various affected entities and individuals challenged the constitutionality of Greater Boston's transportation control plan. The plan, which provided for reduction of vehic-

ular air pollution, incorporated a provision regulating, and in certain instances eliminating, portions of Boston's off-street and on-street parking. Plaintiffs' contracts clause claim rested on the fact that such a drastic reduction of parking facilities would reduce the value of various bonds having an indirect dependence on parking revenues. In rejecting plaintiffs' argument, the court in *South Terminal* emphasized:

"The contentions prove too much. Were they accepted, all governmental action affecting the profitability of private concerns would violate the contracts clause because it would change relative values and make those enterprises the prospects of which were diminished by the legislation somewhat less likely to keep their bargains. We do not understand that this is the import of the contracts clause. We read it as forbidding instead an alteration in the relative position of two parties to an existing contract; once these parties, as between themselves, have allocated rights and responsibilities, it is not within the power of the government to rearrange them. *Home Building & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 428, 54 S.Ct. 231, 78 L.Ed. 413 (1934). Even then the clause is not read with literal exactness; minor reallocations, not going to the heart of the bargain, are sometimes permitted to effect an overriding public purpose. But this sort of alteration of relative obligations is considerably different from the 'diminished profitability and therefore diminished ability to keep up obligations' argument made by petitioners. An otherwise valid governmental regulation does not become impermissible merely because an object of the regulation is a party to some contracts. Nor can a party make otherwise unlawful action permissible merely by making a contract about it."

*South Terminal Corp., supra* at 680.

We are unconvinced by plaintiffs' argument that the South Terminal decision has been undermined by the Supreme Court's decision in *United States Trust.* The factu-

al situations in the two cases are clearly distinguishable. The basic point in *United States Trust* was that the repeal of the covenant was inherently unreasonable. Money, and only money, was at stake, and evident alternatives existed for the states to realize their goals without so crushing an intrusion on the rights of the bondholders. On the other hand, *South Terminal* and the present case involve legislation of a kind that is certainly within the proper purview of police power. *Home Building & Loan Ass'n v. Blaisdell, supra; Faitoute Iron & Steel Co. v. City of Asbury Park,* 316 U.S. 502, 62 S.Ct. 1129, 86 L.Ed. 1629 (1942); *Euclid v. Amber Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). Thus where the challenged legislation in *United States Trust* went to the very heart of the original contract, the LUO has affected only the value of various properties which secure the indebtedness to plaintiffs' bonds. Plaintiffs, as the owners of a vested security interest in the Round Hill properties, are in no different position than the owners of the properties. Their loss is not different in kind or quality if the restrictions on use imposed by the LUO are ultimately found to be valid. We believe the difference to be crucial.

Accordingly,

*IT HEREBY IS ORDERED* that defendants' motion to dismiss the action be, and the same hereby is, granted.