**NATIONAL RETAILERS CORPORATION OF ARIZONA, an Arizona Corporation, Plaintiff,**

v.

**VALLEY NATIONAL BANK, a National Banking Association; and James E. Smith, Comptroller of Currency, Defendants.**

**Civ. No. 71–410–PHX–WEC.**

United States District Court,
D. Arizona.

Feb. 2, 1976.

---

Jeremy E. Butler, Lewis & Roca, Phoenix, Ariz., for plaintiff NRCA.

Charles E. James, Jr., Gust, Rosenfeld, Divelbess & Henderson, Phoenix, Ariz., for defendant Valley Bank of Arizona.

James V. Elliott, Washington, D. C., for defendant James E. Smith, Comptroller of Currency.

## MEMORANDUM OF DECISION

BOLDT, Senior District Judge, Sitting by Designation.

### I. STATEMENT OF THE CASE

This is an action for a declaratory judgment and injunctive relief against the defendant, James E. Smith, Comptroller of Currency (hereafter Comptroller). Plaintiff seeks a declaratory judgment that a ruling, 12 C.F.R. § 7.3500, *Use of data processing equipment and furnishing of data processing services,* issued by the Comptroller is unlawful and should be set aside as arbitrary, capricious and an abuse of discretion, contrary to constitutional rights, power, privilege or immunity and, in excess of statutory jurisdiction, authority or limitations. Injunctive relief is sought to enjoin the Comptroller from issuing any opinion, rule or regulation permitting national banks to perform computer data processing services for any person unless the data processing services are directly "incidental" to the express powers of the bank under the National Bank Act, 12 U.S.C. § 24.

The factual pattern within which plaintiff seeks the declaratory and in-

junctive relief involves plaintiff, National Retailers Corporation of Arizona (hereafter NRCA) an Arizona corporation that has been offering data processing services to retailers and others in Arizona since 1966. The data processing services offered by plaintiff require the use of a cash register and computer sold by National Cash Register (NCR). The cash register produces a magnetic tape which can be fed into the NCR computer to produce computer print-outs reflecting various aspects of the customer's business. One of plaintiff's customers, a subsidiary of Hart, Schaffner & Marx, was Hanny's, a retail clothing merchandiser with a substantial number of stores in Arizona and in the Phoenix area. Prior to October 1, 1971, Hanny's was obtaining data processing services from plaintiff. On or about October 1, 1971, Hanny's obtained almost identical services from Valley National Bank (hereafter VNB). The data processing services offered by the VNB to Hanny's and the public, also utilized an NCR cash register and computer combination. The contested service which VNB offers pursuant to the Comptroller's ruling is called a Retail Information System (hereafter RIS). The retailer's sales transaction data, when recorded on NCR cash registers and processed through an NCR computer owned by VNB, can be assembled and compiled into numerous different reports which provide the retailer with information regarding various aspects of his business. A retailer whose sales data has been processed by VNB has the option of purchasing some or all of the reports made available by VNB's data processing service.

It is asserted by plaintiff, and the Court finds that, in fact, VNB relied on the ruling of the Comptroller, 12 C.F.R. § 7.3500, in providing the data processing services which are the subject matter of this litigation. The Comptroller of the Currency has issued this ruling as being his interpretation of the authority of national banks to provide data processing services under the National Bank Act, 12 U.S.C. § 24 (Seventh).

Plaintiff contends that the providing of data processing services to the public by VNB is not authorized by the express provisions of the National Bank Act, that the Comptroller exceeded his authority in rendering the interpretive ruling in question, and, in effect, induced VNB to provide such services.

The Comptroller challenges all of plaintiff's contentions and affirmatively asserts several other contentions, each of which is stated and ruled upon by the Court in paragraph IV below.

The undersigned Judge, (W.D. Wash.) sitting in this District by designation, was assigned to conduct a non-jury trial on the issues now presented in this case. In prior proceedings in the case: (1) on August 21, 1971, Judge William Frey, (D. Ariz.), denied plaintiff's motion for a preliminary injunction and entered Findings of Fact and Conclusions of Law consistent therewith; and (2) on October 30, 1975, Chief Judge Walter E. Craig (D. Ariz.) ruled that the VNB should be dismissed from the present action, thus making it unnecessary to determine the motion of VNB for partial summary judgment.

## II. SUMMARY OF ISSUES PRESENTED

1. Does this Court have jurisdiction over the subject matter of this action?

2. Does the fact that VNB has been dismissed from this action in a prior ruling render any of the issues moot?

3. Does plaintiff have standing to assert its contentions in this Court?

4. Are the defendant's contentions, testimony, and exhibits pertaining to electronic money relevant or material to any issues in this action?

5. Are the Findings of Fact and Conclusions of Law entered by Judge Frey in denying plaintiff's motion for a preliminary injunction binding on this Court in

6. Has the Comptroller of the Currency by issuing and publishing the ruling contained in 12 C.F.R. § 7.3500, exceeded his statutory authority, violated

constitutional rights, rendered an arbitrary or capricious ruling in abuse of his discretion or not in accordance with law?

7. If so, should the Court enjoin the Comptroller of the Currency from issuing or giving effect to 12 C.F.R. § 7.3500, or any other interpretative ruling or regulation issued by him that would authorize a national bank to perform data processing services this Court finds and holds are not directly authorized by the National Bank Act or within the "incidental powers . . . necessary to carry on the business of banking"?

## III. STATEMENT OF FACTS FOUND

At final argument the Court informed counsel that as a general principle and in the particular circumstances of this case, the rulings of this Court should and would be strictly limited to the specific issues presented in the Final Pretrial Order and the facts found pertaining to those issues. The following basic and controlling facts found by the Court are summarized as below stated. Other detailed and specific findings by the Court are stated in written Findings of Fact and Conclusions of Law signed and entered herewith.

Before plaintiff began doing business in Arizona, its officers and employees had extensive knowledge, training and actual experience in providing computer data processing services to retail businesses with considerable success in other areas, notably California. Prior to engaging in the same business in Arizona, plaintiff conducted an extensive search for potential customers, and conducted negotiations with them, including Hanny's and others. A customer doing business of the magnitude and with the substantial need for data processing services, such as Hanny's, was essential to plaintiff's entering business in Arizona. A firm commitment by Hanny's to take plaintiff's services on specific terms made it possible for plaintiff to begin business in this state in 1967. After various initial problems were resolved to Hanny's satisfaction over a period of time, plaintiff enjoyed not only a substantial regular income from the Hanny's account but also serviced a considerable number of small retail concerns in various areas in this state which produced significant income for plaintiff.

For some time prior to plaintiff engaging in business in this state, Hanny's had a deposit account at the VNB. An executive of that bank, Jere J. Brommer, when plaintiff's service to Hanny's commenced, acquired considerable information concerning plaintiff's data processing services to Hanny's which eventually led him to urge higher bank officials to authorize him to make a thorough study as to whether the bank might profitably provide to the public substantially the same services plaintiff provided Hanny's. Based on Brommer's study the bank approved his proposal that the bank purchase its own computers, related equipment and software from NCR. Over a period of several months, prior to acquiring the Hanny's account, Brommer, representatives of NCR and Hanny's engaged in numerous discussions resulting in a commitment from Hanny's to switch from plaintiff's data processing service to that of the bank in October of 1971. Subsequent to VNB putting the RIS into operation Hanny's notified plaintiff that its data processing services were terminated. The bank charged Hanny's substantially lower rates than those of plaintiff for essentially the same services. This was accomplished by all of those who, without advising plaintiff, participated in bringing about the bank take-over of Hanny's account from plaintiff. Shortly following this event, plaintiff brought the present action and, among other claims alleged, asserted the claims against the Comptroller now before this Court.

The subject matter covered and the facts found by the Court as stated above are based on the trial and deposition testimony admitted in evidence of witnesses Robert Palmer, Ira Fulton and Lester DeFreese and to the extent not inconsistent with the above findings, that of Jack Crawford and Brommer. Brommer

and Crawford were highly interested witnesses. Portions of their testimony might negative any of the foregoing facts; however, the Court finds such portions incredible upon reasonable inferences drawn from a consideration of the evidence as a whole.

## IV. RULINGS RE: JURISDICTION, MOOTNESS, STANDING, ELECTRONIC MONEY, PRELIMINARY INJUNCTION FINDINGS, COMPTROLLER RULING AND INJUNCTION

### 1. JURISDICTION:

After a full review of the arguments and briefs of counsel as well as the cited authority, the Court finds and holds that it has subject matter jurisdiction over this action, established by 28 U.S.C. § 1337, § 1331(a) and upon the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* A number of cases hold the Commerce Clause of the United States Constitution is a significant source for the National Bank Act and therefore jurisdiction is proper under 28 U.S.C. § 1337.[1] For jurisdiction under 28 U.S.C. § 1331(a) the matter in controversy must exceed "the sum or value of $10,000" and arise under the "laws of the United States." The present controversy arises under the National Bank Act and interpretive rulings thereto. The Court finds that the sum and the value of plaintiff's right to offer data processing services, which allegedly has been adversely affected by defendant's alleged invalid interpretive ruling, are both in excess of $10,000 exclusive of interest and costs. See *Quinault Tribe of Indians v. Gallagher,* 368 F.2d 648 (9th Cir. 1966). Consistent with further rulings herein, jurisdiction also exists under the Administrative Procedure Act. *State of Washington v. Udall,* 417 F.2d 1310 (9th Cir. 1969).

### 2. MOOTNESS:

Although not supported by a particularized motion or memorandum of authorities, defendant's contention that dismissal of VNB rendered the present issues moot has been reviewed and is hereby denied. See *Super Tire Engineering Company v. McCorkle,* 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974).

### 3. STANDING:

The Court finds defendant's contentions on this subject to be without merit under *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and *Arnold Tours, Inc. v. Camp,* 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970).

### 4. ELECTRONIC MONEY:

Upon a thorough review of the evidence and argument, the Court finds that the defendant's contentions, testimony and exhibits regarding present and future developments in electronic money to be, as far as the issues in this case are concerned, largely, if not entirely, a matter of speculation and conjecture. Accordingly, all of the defendant's contentions and evidence pertaining to electronic money are hereby stricken from this case.

### 5. EFFECT OF FINDINGS ENTERED DENYING PLAINTIFF A PRELIMINARY INJUNCTION:

█ The findings entered by Judge Frey in denying plaintiff's motion for a preliminary injunction are not binding on this Court in conducting a trial of the merits. *Bursten v. Phillips,* 351 F.2d 616 (9th Cir. 1965); *Sierra Club v. Morton,* 348 F.Supp. 219 (N.D.Cal.1972).

### 6. REVIEW OF COMPTROLLER'S RULING:

The Comptroller is the official charged with the administration of the National Bank Act. Consistent with that duty

1. *Murphy v. Colonial Federal Savings and Loan Association,* 388 F.2d 609, 615 (2d Cir. 1967); *Cupo v. Community National Bank & Trust Co. of N. Y.,* 438 F.2d 108 (2d Cir. 1971); *Burns v. American National Bank and Trust Company,* 479 F.2d 26 (8th Cir. 1973); and *Partain v. First National Bank of Montgomery,* 467 F.2d 167, 172 (5th Cir. 1972).

and in the area of the relationship between national banks and the offer of data processing services, the Comptroller has issued several rulings and written opinions interpreting the provisions of the National Bank Act on the conduct of data processing services by national banks. The first of these pronouncements was issued in June of 1959 and has now resulted in the latest ruling contained in 12 C.F.R. § 7.3500, with comments in 39 Fed.Reg. 14195 (April 22, 1974), which reads as follows:

"(a) A national bank may use data processing equipment and technology to perform for itself and *others* all services expressly or incidentally authorized under the statutes applicable to national banks. For example, as part of its banking business and incidental thereto, a national bank may collect, transcribe, process, analyze, and store, for itself and *others*, banking, financial, or related economic data. In addition, incidental to its banking business, a national bank may (1) market a by-product (e. g., program, output, etc.) of an above-described data processing activity; and (2) *market excess time* on its data processing equipment so long as the only involvement by the bank is furnishing the facility and necessary operating personnel.

(b) The provision of data processing services by a national bank to others is subject to the prohibitions contained in 12 U.S.C. 1972 concerning tying arrangements, reciprocal dealing, and price discrimination. In particular, a national bank may not require any party who is or proposes to be a customer for any service or product of the bank to utilize any data processing service offered by the bank, and the bank may not fix or vary the consideration for any extension of credit, lease, or sale of property or provision of another service on the condition or requirement that a customer utilize a data processing service offered by the bank." (emphasis added).

The VNB relies primarily upon the foregoing interpretive ruling, comments thereon, and secondarily on previous opinions and rulings in offering the RIS to the public, primarily retailers.[2] Throughout the comments to the ruling the Comptroller repeatedly emphasizes the fact that national banks offering data processing services are limited by the express provisions of and incidental powers emanating from the National Bank Act. No express provision of the Act authorizes the public marketing of the RIS by the VNB. The issue, then, is whether the RIS is within the VNB's "incidental powers . . . necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh). If so, the RIS may be properly authorized by the Comptroller pursuant to his duty to administer the National Bank Act. If not, the Comptroller may not authorize the RIS or a similar national bank service, for to do so would exceed his delegated authority and be contrary to the law. It is evident from the foregoing discussion that this Court must interpret the National Bank Act and the Comptroller's ruling as related to the facts presented in this case. Although the Comptroller's opinion is to be given serious consideration[3] it is the duty of the judiciary to determine the "legitimate bounds of

---

2. See Findings of Fact Nos. 5, 6 and 7.

3. Plaintiff, however, points out that a number of the Comptroller's rulings in 1963 have subsequently been held invalid by the courts as being incorrect interpretation and application of relevant statutes. The cases and the subject matters of the voided rulings are as follows: *Georgia Ass'n of Independent Ins. Agents, Inc. v. Saxon*, 268 F.Supp. 236 (N.D. Ga.1967) *aff'd*, 399 F.2d 1010 (5th Cir. 1968) (insurance); *Baker, Watts & Co. v. Saxon*, 261 F.Supp. 247 (D.D.C.1966), *aff'd*, 129 U.S.App. D.C. 173, 392 F.2d 497 (1968) (underwriting government securities); *Investment Company Institute v. Camp*, 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971) (mutual investment funds); *First National Bank v. Dickinson*, 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969) (armored car service and deposit receptacles). Accord, *Arnold Tours, Inc. v. Camp*, 472 F.2d 427 (1st Cir. 1972) (travel agency).

statutory authority." *M & M Leasing Corp. v. Seattle-First National Bank,* 391 F.Supp. 1290, 1295 (W.D.Wash.1975). Once challenged, the Court must seriously consider the ruling of defendant and the merits of the challenge levied against it. In thoroughly examining and considering the issues in this litigation the Court shall interpret the appropriate provisions of the National Bank Act flexibly. Undeniably national banks should strive to develop and utilize modern methods and technologies in order to provide their customers with efficient and useful services. Such efforts, however desirable, must not contravene the provisions of the National Bank Act.

■ Having been presented with the problem of determining the nature and extent of the "incidental" powers of national banks the Court in *Arnold Tours, Inc. v. Camp,* 472 F.2d 427 (1st Cir. 1972) stated:

> ". . . when one looks at past decisions it becomes apparent that the activities of national banks which have been held to be permissible under the 'incidental powers' provision have been those which are *directly* related to one or another of a national bank's express powers."

> .  .  .  .  .

> "In our opinion, these decisions [4] amply demonstrate that a national bank's activity is authorized as an incidental power, 'necessary to carry on the business of banking,' within the meaning of 12 U.S.C. § 24, Seventh, if it is *convenient or useful* in connection with the performance of one of the bank's established activities pursuant to its express powers under the National Bank Act. If this connection between an incidental activity and an express power does not exist, the ac-

tivity is not authorized as an incidental power." 472 F.2d at 431, 432. (footnote and emphasis added)

■ For this Court to apply the *Arnold Tours* standard, which this Court approves and adopts, the relevant express powers of the National Bank Act must be compared to the activity alleged by defendant to be within the incidental powers of national banks, i. e. the RIS provided by VNB. Having done so, the Court must decide whether the service in question is "convenient or useful" to the performance by the VNB of express powers stated in the National Bank Act. If so, it is within the incidental powers of a national bank. Defendant contends the RIS is very useful to the VNB and national banks in general when considering and processing applications for loans on accounts receivable or for operating capital. National banks lending money for operating capital or on accounts receivable is a function clearly within the express powers under the National Bank Act. 12 U.S.C. § 24 (Seventh). Upon a thorough examination of the evidence and authorities presented this Court is satisfied that the RIS of the VNB is not "convenient or useful" to the performance by the VNB of express powers under the *Arnold Tours* standard. Nor is the offering of the RIS without limitation permissible under any reasonable interpretation of the incidental powers provision of the National Bank Act. Therefore, the RIS of the VNB is not a proper or legal activity within the statutory context of 12 U.S.C. § 24 (Seventh) and to the extent the Comptroller's ruling and comments authorizes or permits without limitation the public marketing of the RIS by the VNB or other national bank, the Comptroller's ruling and comments are found to be contrary to law and in excess of his delegated authority and are hereby declared invalid.

---

4.  *Merchants' Nat. Bank v. State Bank,* 77 U.S. (10 Wall.) 604, 19 L.Ed. 1008 (1870); *First National Bank of Charlotte v. National Exchange Bank,* 92 U.S. 122, 23 L.Ed. 679 (1875); *Wyman v. Wallace,* 201 U.S. 230, 26 S.Ct. 495, 50 L.Ed. 738 (1906); *Miller v. King,* 223 U.S. 505, 32 S.Ct. 243, 56 L.Ed. 528 (1912); *Clem-* ent *National Bank v. Vermont,* 231 U.S. 120, 34 S.Ct. 31, 58 L.Ed. 147 (1913); *First National Bank v. Hartford,* 273 U.S. 548, 47 S.Ct. 462, 71 L.Ed. 767 (1927); *Franklin Nat. Bank v. New York,* 347 U.S. 373, 74 S.Ct. 550, 98 L.Ed. 767 (1954).

If the reports available from the RIS service were limited to the *processing* of applications for accounts receivable or operating capital loans by the VNB this Court would not hesitate to find such activity sufficiently related to the express powers of national banks and within the standard of *Arnold Tours*, and would hold that the RIS as limited was within national bank incidental powers. However, the facts of this case are otherwise. VNB did not limit or intend to limit the RIS to producing information and reports useful in processing and considering loan applications from persons or businesses participating in the RIS. It is because of this wide latitude in the range of persons offered the RIS which is not specifically limited by or excepted from the Comptroller's interpretive ruling, that this Court finds the ruling to be beyond the authority of the Comptroller and contrary to the law as interpreted by this Court. By so ruling, the Court does not find the Comptroller's ruling was arbitrary or capricious inasmuch as the ruling, prior to adoption, was fully considered and widely submitted for comment by interested persons.

■ Defendant places much reliance on *National Courier Association v. Board of Governors et al.*, 516 F.2d 1229 (D.C. Cir.1975). Although a Bank Holding Company Act case, defendant maintains *National Courier* provides this Court with an applicable and viable test for relatedness of national bank activities and requires that national banks like VNB not limit the offer to the RIS to bank loan customers because of anti-tying requirements. As to the test which defendant urges this Court to consider, the Comptroller in the comments to 12 C.F.R. 7.350 contained in 39 Fed.Reg. 14192 (April 22, 1974) acknowledges that the standards for determining sufficiently related bank and bank holding company activities are *different* under the National Bank Act and the Bank Holding Company Act. That fact sufficiently precludes unlimited reliance on that case by this Court. In any event, the Court is not persuaded that defendant has satisfactorily shown that the *National Courier* standard is applicable to the instant case. As to the anti-tying contention, this Court is of the opinion that a national bank may offer and provide the RIS as a means of providing useful information in processing operating capital and accounts receivable loans provided that the *granting* of such loans is not conditioned upon the applicant's participation in the RIS.

In summary, the Court finds that under the facts of this case the VNB, or any other national bank, is not empowered under the National Bank Act to market the RIS or other comparable service to the general public or to bank depositors when the performance of the data processing service is not "convenient or useful" or does not bear a direct relationship to the bank's performance of any of the express powers specified in the National Bank Act. To the extent the Comptroller's ruling permits or authorizes such a performance of data processing services without relation to express powers, it is in excess of his delegated authority and contrary to law and the Court so finds and holds.

Had the RIS of the VNB been limited to use in processing loan applications or the performance of some other express power under the National Bank Act, the test of *Arnold Tours* would have been met. The RIS of the VNB is not so limited, it has never been performed, with respect to Hanny's, in connection with the VNB exercising any of the express powers under the National Bank Act, the test of *Arnold Tours* is not satisfied and the RIS is not legal.

## 7. INJUNCTION:

■ The Court having found the Comptroller's interpretive ruling should be limited and having specified that limitation in the preceding section, the Court now considers the question of whether defendant should be enjoined from issuing further rulings, opinions and the like which are contrary to the present ruling of this Court.

The essence of the Court's opinion is the interpretation of the National Bank Act as it relates to the offer of data processing services by the VNB. When the Comptroller issued his ruling, this Court's decision interpreting the National Bank Act had not been rendered. The Court's ruling establishes a new interpretation that hopefully will provide some guidance to the Comptroller in future rulings. In view of these facts the Court must assume that the Comptroller will accept and conform to the decision of this Court as long as it remains viable. Plaintiff having failed to satisfactorily establish that irreparable injury will result if defendant is not enjoined, or that future violations by defendant of this Court's rulings are imminent or likely, the Court declines to issue an injunction.

## CONCLUSION

The Court emphasizes its intent and purpose to limit the scope and effect of this decision to the precise factual circumstances presented in the trial.

The primary focus of plaintiff's case has been the offer and sale of the RIS by the VNB to Hanny's and to the public, therefore the Court's review of defendant's ruling has been strictly limited to those precise facts. The judgment in this case does, however, have the collateral effect of advising the VNB, although no longer a party to this action, that reliance upon 12 C.F.R. § 7.3500 and the comments thereto, in offering the RIS to the public without limitation, is unwarranted.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based upon thorough examination and full consideration of the memoranda and argument of counsel as well as the exhibits and testimony adduced at trial the Court hereby makes the following Findings of Fact and Conclusions of Law. The Memoranda of Decision, filed this date, is made a part hereof and incorporated herein by reference.

## FINDINGS OF FACT

1. The plaintiff is an Arizona corporation, incorporated under the laws of the State of Arizona in 1966.

2. The Valley National Bank is a national banking association, whose principal place of business is in Phoenix, Maricopa County, State of Arizona.

3. The defendant, James E. Smith, is the duly appointed and acting Comptroller of the Currency of the United States of America.

4. The Comptroller of the Currency is the official charged with the administration of the National Bank Act.

5. On or about June 9, 1959, the Comptroller's office issued its first written opinion approving the sale by a national bank of certain data processing services to the public.

6. In the March 1964 supplement to the Comptroller's Manual for National Banks, the Comptroller's opinion on the subject was published as an interpretive ruling (12 C.F.R. § 7.3500), which stated the Comptroller's view as follows:

"A national bank may make available for the use of others data processing equipment acquired for the primary purpose of performing a service incidental to banking."

7. Paragraph 3500 has been modified and rephrased several times and prior to April 22, 1974, read as follows:

"Incidental to its banking services, a national bank may make available its data processing equipment or perform data processing services on such equipment for other banks and bank customers."

8. On or about April 22, 1974, paragraph 3500 was amended to read as follows:

"(a) A national bank may use data processing equipment and technology to perform for itself and others all services expressly or incidentally authorized under the statutes applicable to national banks. For example, as part of its banking business and incidental thereto, a national bank may

collect, transcribe, process, analyze, and store, for itself and others, banking, financial or related economic data. In addition, incidental to its banking business, a national bank may (1) market a by-product (e. g., program, output, etc.) of an above-described data processing activity; and (2) market excess time on its data processing equipment so long as the only involvement by the bank is furnishing the facility and necessary operating personnel.

(b) The provision of data processing services by a national bank to others is subject to the prohibitions contained in 12 U.S.C. 1972 concerning tying arrangements, reciprocal dealing, and price discrimination. In particular, a national bank may not require any party who is or proposes to be a customer for any service or product of the bank to utilize any data processing service offered by the bank, and the bank may not fix or vary the consideration for any extension of credit, lease, or sale of property or provision of another service on the condition or requirement that a customer utilize a data processing service offered by the bank."

9. Beginning in 1965 or 1966, Robert Palmer, acting through his contacts with Hart, Schaffner & Marx in Chicago, and its subsidiary Hanny's in Phoenix, started negotiations by which NRCA ultimately would perform data processing services for Hanny's in Phoenix, Arizona, by using data processing equipment sold by NCR. An agreement was reached with Hanny's through its officer, Les DeFreese, and through officers of Hart, Schaffner & Marx, that Hanny's would receive data processing services from the plaintiff indefinitely as long as the service was satisfactory and the price for that service was competitive.

10. In late 1966, or early 1967, the plaintiff originally offered the services described in the booklet called the "8–C Plan."

11. During 1967, through 1971, NRCA performed data processing services for Hanny's.

12. The plaintiff does not now, nor has it ever owned an NCR 315 computer or any other computer.

13. In 1968, Mr. Jere J. Brommer, now vice president of the VNB conducted a market survey of some retail businesses in Arizona, including retailers who were obtaining data processing services from the plaintiff. Sometime in 1968, the VNB decided to acquire from NCR a computer and the related programming for the purpose of offering to perform data processing services substantially identical to data processing services being then offered by NRCA in conjunction with NCR.

14. In 1969, VNB acquired from NCR an NCR 315 computer, which was subsequently replaced by a more modern computer.

15. The VNB owned the 315 computer, its replacement computer, and all other computers on which it performs data processing services, except in extraordinary circumstances when it buys computer time.

16. Prior to the acquisition of an NCR computer by VNB, the plaintiff was offering certain data processing services to businesses in Arizona, concentrating on retail businesses. After the bank purchased the computer, VNB competed with the plaintiff by offering similar data processing services to the same businesses or types of businesses. Without the competition from the VNB, Hanny's in reasonable probability, would have continued to be a customer of NRCA for the reasonably foreseeable future, but as a result of the acts of VNB, Hanny's terminated its agreement with the plaintiff as of October 1, 1971.

17. Sometime after the acquisition of the NCR 315 computer, the VNB began to offer to the public the data processing services described in the booklet entitled "VNB Retail Information Systems."

18. The NCR 315 computer and its related programming was not acquired by the VNB for the purpose of maintaining financial records on the discounting and negotiating of promissory notes, drafts, bills of exchange, or other evi-

dence of debt; for keeping a record of funds deposited with the bank; keeping a record of the buying and selling exchange coin and bullion; or for keeping a record of loans of money on personal security or obtaining, issuing or circulating notes. The NCR 315 computer and the related programming were purchased by the VNB to offer the Retail Information System to persons whether or not they were customers of the VNB.

19. The Retail Information System offered by the VNB to retailers in the State of Arizona is strictly the manipulating of punch paper and optical tapes to produce manager information reports.

20. The VNB has offered data processing services to retailers in the State of Arizona in reliance upon the rulings of the Comptroller of Currency, including 12 C.F.R. § 7.3500 and its predecessor rulings.

21. In the summer of 1971, Hanny's entered into an agreement with VNB to provide it with certain data processing services commencing as of October 1, 1971.

22. Hanny's was a commercial depositor with the VNB.

23. The data processing services received by Hanny's after October 1, 1971 were essentially the same as those it had been receiving from NRCA prior to October 1, 1971.

24. Prior to the changeover by Hanny's from NRCA to the VNB for its data processing services, Hanny's had paid NRCA more than $250,000.00 for the services provided by NRCA.

25. Prior to October 1, 1971, Hanny's had paid to NRCA more than $5,000.00 per month for data processing services.

26. VNB has continued to perform certain data processing services for Hanny's to the present date.

27. In 1971 and down to the date hereof the VNB has offered to perform data processing services or has made time available on its computer for the performance of data processing services that are not in any way incidental to the business of banking such as student records of the Maricopa County Community College District in Maricopa County, State of Arizona.

28. The amount in controversy and the value of the right involved both exceed the sum of $10,000.00 exclusive of interest and costs.

29. The Court has no evidence before it to show that the Comptroller's ruling is unreasonable, irrational, arbitrary or capricious.

CONCLUSIONS OF LAW.

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1337.

2. This Court has jurisdiction over this matter under 28 U.S.C. § 1331(a).

3. This Court has jurisdiction over this matter under 5 U.S.C. § 701, et seq., the Administrative Procedure Act.

4. This Court is authorized under 28 U.S.C. §§ 2201 and 2202 to grant declaratory relief in favor of the plaintiff.

5. The plaintiff has standing to maintain this action against the Comptroller of the Currency.

6. The Retail Information System as offered by the VNB to retailers in Arizona is not directly incidental to any one of the express powers of banks stated in the National Bank Act, 12 U.S.C. § 24 (Seventh).

7. To the extent specified in the Court's Memorandum of Decision, the ruling of the comptroller contained in 12 C.F.R. § 7.3500 and 39 Fed.Reg. 14129 (April 22, 1974) is declared invalid, in excess of statutory authority and contrary to law.

DECLARATORY JUDGMENT

The above cause having been fully tried before the undersigned Judge; a Memorandum of Decision, Findings of Fact and Conclusions of Law having been entered; and the Court having fully considered each of the issues presented, for the reasons stated in the written Findings of Fact and Conclusions of Law does hereby render Declaratory Judgment as follows:

Defendant, James E. Smith, Comptroller of the Currency, in making and publishing his interpretive ruling contained in 12 C.F.R. § 7.3500 and 39 Fed.Reg. 14195 (April 22, 1975) exceeded his statutory authority and rendered a ruling contrary to law in the particulars stated in the Memorandum Decision of the Court.